PEOPLE *v.* MOORE.

NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—AFFIDAVIT — CRIMINAL
LAW.

> Where it appeared from an affidavit offered in support of a
> motion for a new trial, that affiant was in the court room,
> without being subpœnaed, waiting to testify as a witness
> for defendant who was charged with assault with intent
> to commit the crime of rape, when he was informed by
> a former deputy sheriff that he would not be allowed
> to testify because he had been in the court room, and that,
> believing this, he left at once without being sworn; that
> he had no opportunity to tell defendant's attorneys what
> he could testify to in detail; and it appearing that his
> testimony would have contradicted the complaining wit-
> ness, and, if believed by the jury, would have strongly
> supported defendant's story and the theory of the de-
> fense, *held,* under all the circumstances of the case, that
> the trial court was in error in not granting the motion.

Exceptions before judgment from Allegan; Cross,
J. Submitted October 16, 1919. (Docket No. 110.)
Decided December 22, 1919.

Horace Moore was convicted of an assault with in-
tent to commit the crime of rape. Reversed.

*Charles Thew* and *Clare E. Hoffman,* for appellant.

KUHN, J. The claims of the people and of the re-
spondent with reference to the offense charged in the
information in this case are thus stated with clearness
and conciseness in the charge of the court:

"In the information filed in this case, the people
charge this respondent with the offense of assault with
intent to commit the crime of rape.

"It is the claim of the people that on the 2d day of
September, 1918, in the township of Leighton in this

county, the respondent, Horace Moore, feloniously assaulted one Matilda Joldersma with the intent then and there to commit the crime of rape.

"It is the claim of the people that on the date alleged that Matilda Joldersma was in the field near her home picking elderberries when the respondent, Horace Moore, came where she was and proposed to her to go over in the cornfield, that she refused, and that he then by force and against her will took hold of her and threw her upon the ground, placed his hand over her mouth so she could not scream, and pulled her skirts up over her hips and placed his knee between her legs and tried to separate them, when Fred Ryder and John Joldersma came and prevented him from accomplishing his purpose.

"The people claim that the respondent is thereby guilty of the offense here charged against him.

"The respondent claims that he was in the field on the day in question and that he saw Matilda Joldersma and she called for him to come over in the field where she was, and that he went over where she was and she sat down on the ground and he sat down on the ground beside her, that she moved up near him and that Fred Ryder and John Joldersma came over where they were and took him by the arms and led him away and afterwards brought him to Allegan.

"He claims he is not guilty of the offense here charged against him."

The trial resulted in a verdict of guilty and the case is here on exceptions before sentence.

Attorneys for the respondent rely on 38 assignments of error, many of them being discussed and argued in their brief. We have, at the time of writing this opinion, not been favored with a brief on the part of the people, although 15 days was allowed from the date that the case was submitted for the filing of such a brief, which time has long since expired.

The case was tried in one day and it is the claim of the counsel for the respondent that the trial was unduly hurried to such an extent that it unreasonably deprived counsel for the respondent of his right to

make a proper defense, as no opportunity was given to submit the necessary requests to charge and that the argument was limited so as not to allow time to properly argue the case. A motion for new trial was made, asking that a new trial be granted on the ground of newly-discovered evidence, misconduct of the jury, and because the verdict was against the clear weight of the evidence.

It appeared from the affidavit of Charles Smith, offered in support of the motion for new trial, that he came to the court to testify as a witness for the respondent without being subpœnaed, and that while standing in the court house, waiting to be called, he was told by one James C. Halloran, who was formerly deputy sheriff, that he would not be permitted to testify because he had been in the court room and that he could not be used as a witness, and, believing this statement, he left at once and was not sworn as a witness. He had no opportunity to tell nor did he tell either of the attorneys for Moore what he could testify to in detail, and that he was reluctant to do so as he did not want to be drawn into the case because he was on friendly terms with those interested. He further states that he lives on a farm adjoining the Moore farm on the north and was at home on Labor Day, the 2d of September, 1918—the date of the alleged offense—and that he saw the respondent cutting corn southwest of where he was at that time, working on the farm, and that he also saw the complaining witness, Matilda Joldersma, standing near the Ryder-Moore line fence, facing the respondent and waving her hand, it appearing to him that she was waving it to the respondent.

The theory of the defense was that the entire situation presented at the time of the alleged offense was one planned in advance by Fred Ryder and John Joldersma, who were watching the respondent on the

day in question and who were hiding within a few rods of the place where the crime was alleged to have been committed. It is also claimed that the complaining witness was a party to the plan. Without reviewing the testimony, we are convinced that there are a great many facts in the record that support this theory of the respondent and in view of this claim, in our opinion, the evidence of Charles Smith as to the conduct of the complaining witness was of very vital importance, not only in that it contradicted the complaining witness, but sustained the claim of the respondent that she was a party to a "put-up job" and aided in inducing the respondent to commit the crime. If his testimony were believed by the jury, it would have strongly supported the defendant's story and might have led to his acquittal of the charge made. It seems to us, in view of the seriousness of the charge against this boy, who, the record shows, was of a deficient mental development, that the trial judge erred in not granting a new trial so that this evidence might properly be brought before the jury for their consideration.

Those other errors which, upon examination, might be considered serious, are of such a character that in all probability they would not occur again upon a new trial. It would not, therefore, be profitable to discuss them.

We think, however, for the reason above stated, that the verdict should be set aside and a new trial granted.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.